## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> *Plaintiff*, <br><br> v. <br><br> **KASIE KEYS**, <br><br> *Defendant.* | Case No. 21-CR-332-RAW |

## ORDER

This matter comes before the court on Defendant Kasie Keys' Motion to Exclude Expert Witness Testimony [Dkt. No. 135], the United States' Motion to Exclude Expert Witness Testimony [Dkt. No. 177], and the United States Magistrate Judge's Report and Recommendation regarding these two motions [Dkt. No. 190]. For the reasons set forth below, the Report and Recommendation is affirmed and adopted as this court's order.

## BACKGROUND

The United States charged Defendant with six counts of child abuse in Indian Country pursuant to 18 U.S.C. §§ 1151, 1152 & Okla. Stat. tit. 21, § 843.5(A), and two counts of child neglect in Indian Country pursuant to 18 U.S.C. §§ 1151, 1152 & Okla. Stat. tit. 21, § 843.5(C). Each count is principally based on an allegation that Defendant medically abused G.Y., a minor child. Defendant, for example, allegedly fabricated illnesses and administered to G.Y. unnecessary medication. G.Y.'s medical records include diagnoses of cerebral palsy, autism disorder, and chronic lung disease. He was initially fed with a gastronomy tube and subsequently placed on total parenteral nutrition ("TPN"), a manner of feeding through the veins which bypasses the gastrointestinal tract. G.Y. was repeatedly hospitalized and, for a time, placed on hospice. Then

after an Oklahoma Department of Human Services investigation, he was removed from Defendant's care and his health improved.

The United States filed its Amended Notice of Intent to Offer Expert Witnesses, which identified seven expert witnesses [Dkt. No. 104]. Defendant then filed her Motion to Exclude [Dkt. No. 135]. Defendant also filed a Supplemental Notice of Intent to Offer Expert Witnesses, which identified one expert witness [Dkt. No. 136]. The United States then filed its Motion to Exclude in which it also sought compelled production of certain documents [Dkt. No. 177]. On August 16–17, 2022, the United States Magistrate Judge conducted an evidentiary hearing on the Motions to Exclude and subsequently entered his Report and Recommendation [Dkt. No. 190]. The Magistrate Judge recommended that each motion be granted in part and denied in part. Regarding Defendant's motion, the Magistrate Judge recommended that two experts be permitted to testify outright, one expert be excluded outright, and four experts be permitted to testify about certain opinions, but not others. Regarding the United States' motion, the Magistrate Judge recommended that the expert be excluded and the related motion to compel be denied as moot. The United States and Defendant each filed an objection [Dkt. Nos. 201, 202].

## LEGAL STANDARD

### I.    Review of a Report and Recommendation.

The district court must conduct a *de novo* review of those portions of the Report and Recommendation to which an objection has been made. 28 U.S.C. § 636(b)(1). It "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.

### II.    Admissibility of Expert Testimony.

The party seeking to admit expert testimony bears the burden of showing such testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Pursuant to Federal

Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

As a gatekeeper, the district court must make specific admissibility findings on the record. *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). When considering whether expert testimony is admissible, the court "must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Nacchio*, 555 F.3d at 1241. Then if the expert is so qualified, the court "must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id*. The Supreme Court has identified four nonexclusive factors a trial court may consider when making the reliability determination: "(1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–594 (1993)).

If the testimony is deemed reliable, the court may still consider other factors to determine whether the testimony will assist the trier of fact, such as: "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *Id*. And even if the testimony is

3

otherwise admissible, it may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

The court will first consider Defendant's motion. The United States initially identified seven expert witnesses to whom Defendant objected. Defendant has since withdrawn her objection to two such witnesses: Dr. Anne Chun-Hui Tsai and Dr. Marilyn Steele. The court will therefore assess only the remaining five witnesses: (1) Dr. Shawna Duncan, (2) Dr. Matthew Misner, (3) Dr. Laura Bode, (4) Nurse Tyra Sweet, and (5) Dr. Mary Stockett. The court will then consider the United States' motion. Defendant initially identified a single expert, Dr. Curtis Grundy, to whom the United States objected. In response to this objection, Defendant conceded the expert's testimony would be inadmissible.

## I.   Dr. Shawna Duncan.

Dr. Duncan is a board-certified pediatrician with twenty years of experience. She is also a professor of pediatrics at the Oklahoma State University College of Osteopathic Medicine. Dr. Duncan was the attending physician for G.Y.'s six admissions to Saint Francis Hospital between 2014 and 2018. Defendant does not object to Dr. Duncan's qualifications.

At issue are five[1] opinions which Dr. Duncan intends to offer: (1) G.Y. did not have a terminal illness prior to July 2018; (2) hospice is only recommended for terminal patients and not for pain management; (3) Defendant was portraying G.Y. as sicker than he was; (4) many of G.Y.'s symptoms were based on his unnecessary TPN dependency; and (5) no natural disease could

---

[1] The Defendant does not challenge Dr. Duncan's opinion that G.Y. could tolerate gastronomy tube feeds, while the United States concedes there is insufficient evidence to support Dr. Duncan's opinion that G.Y.'s symptoms were not consistent with a mitochondrial disease.

explain G.Y.'s illnesses and sudden recovery. The Magistrate Judge concluded that Dr. Duncan should be permitted to testify as to Opinions (1), (2), and (4), but not as to Opinions (3) and (5).

The court agrees with these conclusions. Dr. Duncan based her opinions on the multiple encounters she had with G.Y., the conversations she had with all parties involved, and her review of G.Y.'s medical records. Opinion (1) (G.Y. did not have a terminal illness prior to July 2018) is based on the physical examinations Dr. Duncan performed. Opinion (2) (hospice is only recommended for terminal patients and not for pain management) is based on Dr. Duncan's experience and education. She testified that she would refer a child for hospice only if he or she had a terminal illness and less than six months to live. Opinion (4) (many of G.Y.'s symptoms were based on his unnecessary TPN dependency) is based on the physical examinations Dr. Duncan performed. In January of 2015, Dr. Duncan referred G.Y. to Dr. Misner with the goal of discontinuing TPN. G.Y., however, was still on TPN when he returned to Dr. Duncan over the next three years. In July of 2018, Dr. Duncan observed systematic signs of end organ damage caused by consistent TPN use.

Dr. Duncan's two remaining opinions, however, are not admissible. Opinion (3) (Defendant was portraying G.Y. as sicker than he was) is excluded because it improperly invades the province of the jury. *See United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (holding "[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."); *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) (noting "[m]any courts exclude expert testimony on the credibility of other witnesses because it usurps a critical function of the jury."). Opinion (3), in that it suggests some manner of deceit, improperly speaks to Defendant's credibility. Opinion (5) (no natural disease could explain G.Y.'s illnesses and sudden recovery) should also be excluded. Dr. Duncan initially opined that G.Y.'s symptoms

were not consistent with a mitochondrial disease. The United States has since conceded that there is insufficient evidence to support this opinion. Consequently, there is also insufficient evidence to support Opinion (5). If Dr. Duncan cannot assert G.Y.'s symptoms were not consistent with a mitochondrial disease, then he cannot assert that no natural disease could explain G.Y.'s illness. A mitochondrial disease has not been definitively ruled out as the underlying cause.

In sum, Dr. Duncan is permitted to testify as to the following opinions: (1) G.Y. did not have a terminal illness prior to July 2018; (2) hospice is only recommended for terminal patients and not for pain management; and (4) many of G.Y.'s symptoms were based on his unnecessary TPN dependency. Dr. Duncan, however, is *not* permitted to testify as to the following opinions: (3) Defendant was portraying G.Y. as sicker than he was; and (5) no natural disease could explain G.Y.'s illnesses and sudden recovery.

## II.    Dr. Matthew Misner.

Dr. Misner is board-certified pediatrician with over twelve years of experience. He is currently a pediatric palliative care and hospice physician. Dr. Misner provided care to G.Y. at the Warren Clinic in January of 2015. Dr. Duncan referred G.Y. to Dr. Misner with the goal of discontinuing G.Y.'s TPN. Dr. Misner physically observed G.Y. for a single visit and continued to manage the TPN for several weeks thereafter. Defendant does not object to Dr. Misner's qualifications.

At issue are six opinions which Dr. Misner seeks to offer: (1) G.Y. did not need oxygen during Dr. Misner's care; (2) G.Y. did not need a wheelchair during Dr. Misner's care; (3) G.Y. did not need TPN during Dr. Misner's care; (4) TPN should have been removed as soon as possible; (5) Defendant unnecessarily delayed the removal of TPN by failing to follow up with a gastroenterologist in a timely manner; and (6) Defendant was portraying G.Y. to be sicker than he

was. The Magistrate Judge concluded that Dr. Misner should be permitted to testify as to Opinions (1), (2), (3), and (4), but not as to Opinions (5) and (6).

The court concludes likewise. Dr. Misner based his opinions on his encounter with and physical examination of G.Y., conversations with Defendant and Dr. Duncan, and his review of G.Y.'s medical records. This methodology, along with Dr. Misner's substantial experience as a pediatrician, is sufficient to render Opinion (1) through Opinion (4) reliable. Opinion (1) through Opinion (3) are properly limited in scope and consider only whether G.Y. needed oxygen, a wheelchair, or TPN during the period of Dr. Misner's care. Opinion (4) (TPN should have been removed as soon as possible) is adequately based on Dr. Misner's experience and training as a pediatric palliative care and hospice physician.

Dr. Misner's two remaining opinions, however, are not admissible. Regarding Opinion (5) (Defendant unnecessarily delayed the removal of TPN by failing to follow up with a gastroenterologist in a timely manner), Dr. Misner testified that Defendant was dishonest about setting up an appointment with a gastroenterologist. By testifying about Defendant's credibility, however, Dr. Misner improperly invades the province of the jury. *See Toledo*, 985 F.2d at 1470. Opinion (6) (Defendant was portraying G.Y. to be sicker than he was) similarly usurps a jury function by testifying about Defendant's trustworthiness. Neither opinion is admissible.

In sum, Dr. Misner is permitted to testify as to the following opinions: (1) G.Y. did not need oxygen during Dr. Misner's care; (2) G.Y. did not need a wheelchair during Dr. Misner's care; (3) G.Y. did not need TPN during Dr. Misner's care; and (4) TPN should have been removed as soon as possible. Dr. Misner, however, is *not* permitted to testify as to the following opinions: (5) Defendant unnecessarily delayed the removal of TPN by failing to follow up with a

gastroenterologist in a timely manner; and (6) Defendant was portraying G.Y. to be sicker than he was.

### III.    Dr. Laura Bode.

Dr. Bode has been a pediatrician since 2014 and currently serves as a pediatric hospitalist and clinical associate professor for the Oklahoma State University Center for Health Sciences Department of Pediatrics. Dr. Bode was the admitting physician for G.Y.'s numerous visits to Saint Francis Hospital from 2015 through 2018. Defendant does not object to Dr. Bode's qualifications.

At issue are six opinions Dr. Bode intends to offer: (1) Defendant caused G.Y. to stay ill; (2) Defendant repeatedly sought unnecessary medical treatment for G.Y.; (3) Defendant dictated the medical treatment G.Y. received; (4) Defendant dictated the medical care G.Y. received; (5) Defendant provided inaccurate information to G.Y.'s physicians; and (6) Defendant requested invasive procedures for G.Y. that were not necessary. The Magistrate Judge concluded that Dr. Bode should be permitted to testify as to Opinions (2), (5), and (6), but not as to Opinions (1), (3), and (4).

The court agrees with these conclusions. Dr. Bode based her opinions on her treatment relationship with G.Y., her treatment relationship with Defendant, and her review of G.Y.'s medical records. Opinion (2) (Defendant repeatedly sought unnecessary medical treatment for G.Y.) and Opinion (6) (Defendant requested invasive procedures for G.Y. that were not necessary) both pertain to Defendant seeking unnecessary care. Dr. Bode testified that Defendant sought a second bone marrow biopsy to test for cancer despite an initial biopsy showing G.Y. did not have cancer. Defendant also sought to have G.Y. discharged to hospice care when the doctors recommended that he stay for further evaluation. Opinions (2) and (6) are admissible. Opinion (5)

(Defendant provided inaccurate information to G.Y.'s physicians) is admissible as well. It was based on Dr. Bode's review of the medical records combined with her training and experience.

Dr. Bode's three remaining opinions, however, are inadmissible. Opinion (1) (Defendant caused G.Y. to stay ill), Opinion (3) (Defendant dictated the medical treatment G.Y. received), and Opinion (4) (Defendant dictated the medical care G.Y. received) all speak to Defendant's representations about medical care. By addressing Defendant's credibility and trustworthiness, these opinions improperly take on a jury function.

In sum, Dr. Bode is permitted to testify as to the following opinions: (2) Defendant repeatedly sought unnecessary medical treatment for G.Y.; (5) Defendant provided inaccurate information to G.Y.'s physicians; and (6) Defendant requested invasive procedures for G.Y. that were not necessary. Dr. Bode, however, is *not* permitted to testify as to the following opinions: (1) Defendant caused G.Y. to stay ill; (3) Defendant dictated the medical treatment G.Y. received; and (4) Defendant dictated the medical care G.Y. received.

### IV.    Nurse Tyra Sweet.

Ms. Sweet has been a Registered Nurse since 1990 and has worked as a forensic nurse in the child welfare division of the Oklahoma Department of Human Services ("DHS") for the past seven years. She earned a Bachelor of Science degree in Nursing in 2014 and a Master of Science degree in Forensic Nursing in 2018. Ms. Sweet conducted a medication review in which she examined medications and medical supplies in G.Y.'s home to ensure his care complied with the physicians' orders. Ms. Sweet took photographs and prepared an accompanying report. She testified that there were discrepancies between the amount of medication present in the home and the amount that should have been present. At issue is a single opinion Ms. Sweet intends to offer:

Defendant's misuse of medication in the home likely caused the near-death experience of G.Y. The Magistrate Judge concluded that Ms. Sweet was not qualified to offer such an opinion.

The court agrees. Ms. Sweet holds no license that would permit her to prescribe medication, and she is prohibited by law from administering medication without an order from a physician. She testified that although the misuse of medication caused G.Y.'s symptoms, a physician would be required to provide a diagnosis of the actual illness. She did not explain which drugs caused the near-death experience and did not offer a basis for her conclusion that Defendant (as opposed to anyone else around G.Y. with access to the medication) caused the near-death experience. Ms. Sweet generally testified that doses of a single medication (gabapentin) were unaccounted for, but did not testify that additional doses of gabapentin caused G.Y.'s symptoms. The court concludes Ms. Sweet's testimony is not based on sufficient data and is not the product of reliable principles. *See Rodriguez-Felix*, 450 F.3d at 1123. Accordingly, she is not permitted to testify as an expert witness. She is, of course, permitted to testify as a fact witness as it pertains to her personal role in the DHS investigation.

## V.      Dr. Mary Stockett.

Dr. Stockett is a board-certified pediatrician and child abuse pediatrician with thirty years of experience. She has testified as an expert over one hundred times and has performed thousands of child abuse evaluation exams. Further, she has performed approximately sixty pediatric condition falsification exams. Defendant does not object to Dr. Stockett's qualifications.

At issue are eleven opinions Dr. Stockett intends to offer: (1) G.Y. was subjected to medical child abuse; (2) "medical child abuse" occurs when a child receives medical care as a result of the inaccurate portrayal of induction of disease by the caretaker; (3) Defendant portrayed G.Y. as being terminally ill when there was an indication he was not terminal; (4) G.Y. recovered when a

10

hospice nurse provided all his care; (5) Defendant provided medications that were no longer ordered when G.Y. was on hospice care; (6) medical child abuse could have led to G.Y.'s death; (7) G.Y. was subjected to medical child neglect; (8) "medical child neglect" is a failure to provide needed medical care, where either it is clear to any reasonable person that a child needs medical care or there is a failure to provide medical care recommended by a medical provider; (9) Defendant did not provide G.Y. all of his prescribed medication; (10) Defendant did not make G.Y. use his chest physiotherapy device; and (11) Defendant was sometimes too tired to flush G.Y.'s suprapubic catheter bladder. The Magistrate Judge concluded that Dr. Stockett should be permitted to testify as to Opinions (1) and (4) through (11), but not as to Opinions (2) and (3).

The court is in agreement with these conclusions. Dr. Stockett based her opinions on her review of G.Y.'s medical records, conversations with Defendant, conversations with other physicians of G.Y., and an in-person physical exam. Opinions (1) through (6) pertain to "medical child abuse," while Opinions (7) through (11) pertain to "child medical neglect." Dr. Stockett provides the definition of each term, asserts G.Y. was subjected to each condition, and then provides averments underlying and supporting each diagnosis.

Opinion (1) (G.Y. was subjected to medical child abuse) was based on an examination of peer-reviewed case reports and guidelines issued by the American Professional Society on the Abuse of Children. Opinion (4) (G.Y. recovered when a hospice nurse provided all his care), Opinion (5) (Defendant provided medications that were no longer ordered when G.Y. was on hospice care) and Opinion (6) (medical child abuse could have led to G.Y.'s death) were based on an examination of the medical records combined with Dr. Stockett's substantial experience and training. These opinions are proper and admissible. Opinion (2) (medical child abuse" occurs when a child receives medical care as a result of the inaccurate portrayal of induction of disease by the

11

caretaker) and Opinion (3) (Defendant portrayed G.Y. as being terminally ill when there was an indication he was not terminal), however, are inadmissible. Dr. Stockett testified that Defendant represented to her that G.Y. had been placed on hospice care for pain management, but the records indicate Defendant elsewhere portrayed G.Y. as having been placed on hospice care due to a terminal illness. Opinion (2) and Opinion (3), in that they focus on Defendant's *portrayal* of G.Y., usurp the role of the jury. It is for the jury to determine Defendant's credibility and whether her portrayal of G.Y. was trustworthy. *See Toledo*, 985 F.2d at 1470.

Now considering medical child neglect, Opinion (7) (G.Y. was subjected to medical child neglect) and Opinion (8) ("medical child neglect" is a failure to provide needed medical care) were based on Dr. Stockett's review of the medical records and her examination of G.Y. This, combined with her substantial experience in assessing and treating children from whom medical neglect is a suspicion, render her conclusions reliable. So too are the underlying averments in Opinion (9) (Defendant did not provide G.Y. all of his prescribed medication), Opinion (10) (Defendant did not make G.Y. use his chest physiotherapy device), and Opinion (11) (Defendant was sometimes too tired to flush G.Y.'s suprapubic catheter bladder). These opinions are reliable and relevant.

Defendant objects to Opinion (1) (G.Y. was subjected to medical child abuse) and Opinion (7) (G.Y. was subjected to medical child neglect) as violative of Federal Rule of Evidence 704. This rule provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). To convict Defendant of either child abuse or child neglect, the United States must prove that she acted "willfully or maliciously." *See* Okla. Stat. tit. 21, § 843.5(A), (C). Defendant argues that in diagnosing G.Y. with medical child

abuse and medical child neglect, Dr. Stockett is improperly testifying that Defendant acted intentionally.

The court rejects this argument. As an initial matter, the testimony addresses only what G.Y. was subjected to, it does not assert Defendant was the cause. But moreover, "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Goodman*, 633 F.3d 963, 970 (10th Cir. 2011) (citation omitted). Opinions (1) and (7) do not state a final conclusion that Defendant acted willfully or maliciously. These opinions are admissible.

In sum, Dr. Stockett is permitted to testify as to the following opinions: (1) G.Y. was subjected to medical child abuse; (4) G.Y. recovered when a hospice nurse provided all his care; (5) Defendant provided medications that were no longer ordered when G.Y. was on hospice care; (6) medical child abuse could have led to G.Y.'s death; (7) G.Y. was subjected to medical child neglect; (8) "medical child neglect" is a failure to provide needed medical care, where either it is clear to any reasonable person that a child needs medical care or there is a failure to provide medical care recommended by a medical provider; (9) Defendant did not provide G.Y. all of his prescribed medication; (10) Defendant did not make G.Y. use his chest physiotherapy device; and (11) Defendant was sometimes too tired to flush G.Y.'s suprapubic catheter bladder. Dr. Stockett, however, is *not* permitted to testify as to the following opinions: (2) "medical child abuse" occurs when a child receives medical care as a result of the inaccurate portrayal of induction of disease by the caretaker; and (3) Defendant portrayed G.Y. as being terminally ill when there was an indication he was not terminal.

13

## VI.    Dr. Curtis Grundy.

Dr. Grundy was Defendant's proposed expert witness and testified at the hearing on the Motions to Exclude. He opined that his examination of Defendant did not support the diagnosis of any mental illness or disorder. Subsequent to the hearing, Defendant conceded Dr. Grundy's testimony should be ruled inadmissible because it would be an improper evaluation of her credibility. The Magistrate Judge agreed, and the court does as well. *See Toledo*, 985 F.2d at 1470. Dr. Grundy is not permitted to testify as an expert witness, and the United States' related motion to compel production of Dr. Grundy's records is consequently denied.

## CONCLUSION

For the reasons set forth above, the Objections of the United States [Dkt. No. 201] and Defendant [Dkt. No. 202] to the Report and Recommendation [Dkt. No. 190] are **OVERRULED**. The United States' Motion to Exclude Expert Witness Testimony and to Compel Records [Dkt. No. 177] and Defendant's Motion to Exclude Expert Witness Testimony [Dkt. No. 135] are **GRANTED IN PART AND DENIED IN PART**, as follows:

I.    <u>Dr. Anne Chun-Hui Tsai</u>: Dr. Chun-Hui Tsai is permitted to testify about those matters listed in the United States' Amended Notice of Intent to Offer Expert Witnesses [Dkt. No. 104].

II.    <u>Dr. Marilyn Steele</u>: Dr. Steele is permitted to testify about those matters listed in the United States' Amended Notice of Intent to Offer Expert Witnesses [Dkt. No. 104].

III.    <u>Dr. Shawna Duncan</u>: Dr. Duncan is permitted to testify as to the following opinions: (1) G.Y. did not have a terminal illness prior to July 2018; (2) hospice is only recommended for terminal patients and not for pain management; and (4) many of G.Y.'s symptoms were based on his unnecessary TPN dependency. Dr. Duncan, however, is *not* permitted to testify as to the following opinions: (3) Defendant was portraying G.Y. as sicker than he was; and (5) no natural disease could explain G.Y.'s illnesses and sudden recovery.

IV.    <u>Dr. Matthew Misner</u>: Dr. Misner is permitted to testify as to the following opinions: (1) G.Y. did not need oxygen during Dr. Misner's care; (2) G.Y. did not need a wheelchair during Dr. Misner's care; (3) G.Y. did not need TPN during Dr.

14

Misner's care; and (4) TPN should have been removed as soon as possible. Dr. Misner, however, is *not* permitted to testify as to the following opinions: (5) Defendant unnecessarily delayed the removal of TPN by failing to follow up with a gastroenterologist in a timely manner; and (6) Defendant was portraying G.Y. to be sicker than he was.

V.  <u>Dr. Laura Bode</u>: Dr. Bode is permitted to testify as to the following opinions: (2) Defendant repeatedly sought unnecessary medical treatment for G.Y.; (5) Defendant provided inaccurate information to G.Y.'s physicians; and (6) Defendant requested invasive procedures for G.Y. that were not necessary. Dr. Bode, however, is *not* permitted to testify as to the following opinions: (1) Defendant caused G.Y. to stay ill; (3) Defendant dictated the medical treatment G.Y. received; and (4) Defendant dictated the medical care G.Y. received.

VI.  <u>Nurse Tyra Sweet</u>: Ms. Sweet is not permitted to testify as an expert witness.

VII.  <u>Dr. Mary Stockett</u>: Dr. Stockett is permitted to testify as to the following opinions: (1) G.Y. was subjected to medical child abuse; (4) G.Y. recovered when a hospice nurse provided all his care; (5) Defendant provided medications that were no longer ordered when G.Y. was on hospice care; (6) medical child abuse could have led to G.Y.'s death; (7) G.Y. was subjected to medical child neglect; (8) "medical child neglect" is a failure to provide needed medical care, where either it is clear to any reasonable person that a child needs medical care or there is a failure to provide medical care recommended by a medical provider; (9) Defendant did not provide G.Y. all of his prescribed medication; (10) Defendant did not make G.Y. use his chest physiotherapy device; and (11) Defendant was sometimes too tired to flush G.Y.'s suprapubic catheter bladder. Dr. Stockett, however, is *not* permitted to testify as to the following opinions: (2) "medical child abuse" occurs when a child receives medical care as a result of the inaccurate portrayal of induction of disease by the caretaker; and (3) Defendant portrayed G.Y. as being terminally ill when there was an indication he was not terminal.

VIII.  <u>Dr. Curtis Grundy</u>: Dr. Grundy is not permitted to testify as an expert witness. The United States' request that Dr. Grundy be compelled to produce documents is denied.

**IT IS SO ORDERED** this 1st day of November, 2022.

*Ronald A. White*

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**