IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> *Plaintiff*, <br><br> v. <br><br> **KASIE KEYS**, <br><br> *Defendant.* | Case No. 21-CR-332-RAW |

**OPINION AND ORDER**

This matter comes before the court on Defendant Kasie Keys' Motion for Judgment of Acquittal [Dkt. No. 219] and the United States' Motion to Reopen its Case-in-Chief, or in the alternative, Response to Defendant's Motion for Judgment of Acquittal [Dkt. No. 224]. For the reasons set forth below, the court grants Defendant's Motion for Judgment of Acquittal and denies the United States' Motion to Reopen its Case-in-Chief.

**BACKGROUND**

The State of Oklahoma initially charged Defendant with felony child abuse, but the case was dismissed due to the jurisdictional implications of *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).[1] Then, prior to the United States Supreme Court's subsequent ruling in *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (2022), the United States charged Defendant with six counts of Child Abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1152 & Okla. Stat. tit. 21, § 843.5(A), and two counts of Child Neglect in Indian Country in violation of 18 U.S.C. §§ 1151, 1152 & Okla. Stat. tit. 21, § 843.5(C). Each count is principally based on allegations that Defendant medically harmed G.Y., her minor child. Title 18 U.S.C. § 1152, the statute pursuant to which the

---

[1] *State of Oklahoma v. Kasie Keys*, District Court of Cherokee County, Oklahoma, Case No. CF-2019-0267.

United States filed these charges, pertains to "interracial crimes only (*i.e.*, when the defendant is an Indian and the victim is a non-Indian, or vice versa)." *United States v. Prentiss*, 256 F.3d 971, 974 (10th Cir. 2001). It provides, in pertinent part, "[t]his section shall not extend to offenses committed by one Indian against the person or property of another Indian[.]" 18 U.S.C. § 1152.

The United States' pre-trial filings in this matter do not address or reference Defendant's non-Indian status. The Indictment which the United States obtained from a grand jury alleges G.Y. is an Indian, but does not allege Defendant is a non-Indian [Dkt. No. 3]. The trial brief and amended trial brief which the United States filed list the elements of the charged offenses, but neither include Defendant's non-Indian status as an element [Dkt. Nos. 80, 91]. Additionally, the two sets of proposed jury instructions which the United States submitted list the elements of the charged offenses, but neither include Defendant's non-Indian status as an element [Dkt. Nos. 81, 191].

At trial, the United States presented negligeable evidence of Defendant's non-Indian status. The prosecutor asked Tiffany Showalter, special agent for the FBI, "As part of the now federal investigation, did you also have to confirm the tribal status of the victim or the defendant in this case?" [Dkt. No. 222, 10:13 – 15]. Ms. Showalter responded that the victim was a member of the Cherokee Nation [*Id.*, 10:16 – 11:4]. The prosecutor also asked Charles York, Defendant's former husband and G.Y.'s biological father, "What side of the family does [G.Y.'s] Native American heritage come from?" Mr. York responded, "My side." As far as documentary evidence, the United States introduced exhibits related to dismissal of the prior state court proceeding. The short order doing so allowed the state court to place an "X" next to two paragraphs – one provided that Defendant has some degree of Indian blood, while the other provided that the victim has some degree of Indian blood [Government Exhibit 4, p. 1]. The state court placed an "X" by the paragraph regarding the victim and left blank the paragraph regarding Defendant. Finally, the

United States admitted into evidence records from a genetics consultation G.Y. underwent. One such record lists G.Y.'s family history and provides: "MATERNAL: Native American ancestry" [Government Exhibit 152, p. 3].

After the United States rested, Defendant moved for a judgment of acquittal on all eight counts pursuant to Federal Rule of Criminal Procedure 29. Specifically, she asserted a defendant's Indian status is an essential element of a crime charged under 18 U.S.C. § 1152 and argued the United States had failed to prove she was a non-Indian. The court reserved decision on the motion, allowed both parties to file expedited briefing, and proceeded with trial. *See* Fed. R. Crim. P. 29(b). Defendant then testified in her case-in-chief and on cross-examination, the United States elicited testimony that she was not "a member of any Native American tribe." The United States subsequently moved to reopen its case-in-chief. The court made an oral ruling in which it denied the United States' motion to the extent it planned to call any additional witnesses, but granted the motion to the extent Defendant's testimony could be considered as a part of the United States' case-in-chief.

After two days of deliberation, the jury returned verdicts of guilty on two counts of child abuse (Counts Two and Four) and verdicts of not guilty on two counts of child neglect (Counts Seven and Eight). It failed to reach unanimous verdicts on the remaining four counts of child abuse (Counts One, Three, Five, and Six). The court declared a mistrial as to those four counts [Dkt. No. 233].[2] *See* Fed. R. Crim. P. 31(b). The court now revisits its ruling on the Motion to Reopen and addresses the deferred Motion for Judgment of Acquittal.

---

[2] This matter was tried over a period of eight days from November 7, 2022, to November 17, 2022. The jury deliberated for approximately eleven hours over a period of two days and twice sent notes to the court indicating it could not come to a unanimous decision on all counts [Court Exhibits 6, 8]. After the first note, the court gave the jury an instruction pursuant to *Allen v. United States*, 164 U.S. 492, 501 (1896), but the jury was still unable to reach a unanimous decision on all counts. After the second note, the court gave an opportunity for the parties to comment on and recommend courses of action. It subsequently declared a mistrial.

## ANALYSIS

The court first considers the United States' Motion to Reopen because, as explained below, its resolution effects Defendant's Motion for Judgment of Acquittal.

### I. Motion to Reopen.

A district court has ample discretion to determine whether to reopen a case. *Morsey v. Chevron USA, Inc.*, 94 F.3d 1470, 1477 (10th Cir. 1996). When determining whether to grant a motion to reopen, a court may consider "(1) the timeliness of the motion, (2) the character of the testimony, (3) the effect of granting the motion, (4) the reasonableness of the excuse for failing to present the evidence prior to resting, and (5) whether belated receipt of the evidence would mark it with distorted importance, prejudice the other party's case, or preclude the other party from adequately addressing it." *United States v. Espinoza*, 211 F. App'x 795, 799 (10th Cir. 2007).[3]

Although the court initially ruled from the bench that Defendant's testimony should be considered as a part of the United States' case-in-chief, it has since reconsidered that ruling as improvident. When a court reserves decision on a motion for acquittal, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." *See* Fed. R. Crim. P. 29(b). The court reserved ruling on the decision after the United States rested and before Defendant testified. Consequently, Defendant's testimony should not be considered for purposes of the motion. *See United States v. Fuller*, 751 F.3d 1150, 1153, n.5 (10th Cir. 2014) (holding the defendant's testimony was not relevant when deciding a motion for acquittal where decision on the motion was reserved after the government rested and before the defendant testified). The court additionally has concerns that use of Defendant's testimony in the United States' case-in-chief implicates the Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a

---

[3] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. *See* Fed. R. App. 32.1; 10th Cir. R. 32.1.

witness against himself." U.S. Const. Amend. V; *see also Brooks v. Tennessee*, 406 U.S. 605, 608 (1972) ("Whether he shall testify or not, if so, at what stage in the progress of his defense, are equally submitted to the free and unrestricted choice of one accused of crime, and are in the very nature of things beyond the control or direction of the presiding judge."). The court therefore withdraws its oral ruling that Defendant's testimony should be considered as a part of the United States' case-in-chief.

The court, however, confirms its oral ruling that the United States is not entitled to reopen its case-in-chief and present additional witnesses. The United States' "case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures." *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980). Consideration of the factors in *Espinoza*, cited above, establishes the United States should not be able to reopen its case. In regard to the first factor, the United States filed its motion "timely" in the sense that it moved to reopen its case the day after Defendant made her motion for acquittal. In regard to the second, the character of the testimony would likely pertain to Defendant's non-Indian status, rendering it relevant and probative. These factors weigh in favor of the United States. The remaining factors, however, weigh in favor of Defendant. As to the third factor, the effect of granting the motion would have been delay of and disruption to the proceedings. It is unclear how long it would have taken the United States to locate and prepare witnesses and evidence sufficient to prove Defendant's non-Indian status, an element which it had apparently not even considered up until Defendant's motion. *See Espinoza*, 211 F. App'x at 799–800 ("[R]eopening the trial would have

delayed the proceedings and disrupted the district court's already busy calendar . . . . It would have also disrupted another trial the district court was set to begin the following week.").[4]

Fourth, the United States has not provided a reasonable excuse for failing to present evidence prior to resting. It simply conceded in its response brief that it "did not recognize that an essential element of a charge of 18 U.S.C. § 1152 was the non-Indian status of the defendant" [Dkt. No. 224, p. 3]. The language of 18 U.S.C. § 1152, however, is express ("This section shall not extend to offenses committed by one Indian against the person or property of another Indian[.]"), and there exists Tenth Circuit precedent directly on this issue. *See Prentiss*, 256 F.3d at 980. The United States asserted in mitigation it was "not aware that this issue was ripe for litigation within the District" [Dkt. No. 224, p. 3]. Again, however, there is Tenth Circuit case law which the United States now concedes is squarely on point. *See Prentiss*, 256 F.3d at 980. A defendant's Indian status is an essential element of a charge under 18 U.S.C. § 1152; there is no issue to be litigated. The court additionally notes a defendant's Indian status is no minor detail and is "often essential in determining what court may hear the case." *Id*. at 974. The United States has not provided a reasonable excuse for failing to recognize an essential element of charges it filed.

Fifth and finally, belated admission of the evidence could result in prejudice to Defendant's case. The United States' pre-trial filings did not provide Defendant notice that her non-Indian status was at issue. She consequently had no impetus to investigate her Indian status or otherwise prepare to defend against that element. Requiring her to do so after the United States has rested could thereby cause her prejudice. *See United States v. Stoner*, 98 F.3d 527, 536 (10th Cir. 1996) (holding that where "the defendant could not have anticipated from the allegations in the

---

[4] Even without reopening the United States' case, the jury returned its verdicts late in the afternoon on Thursday, November 17, 2022. The court began another trial on Monday, November 21, 2022. While the jury was deliberating, the court conducted pre-trial conferences ahead of the three trials it has scheduled in December of 2022.

indictment what the evidence would be at trial . . . the defendant's Sixth Amendment right to notice of the charges against her" may be prejudiced).

Consequently, the United States is not entitled to reopen its case-in-chief and Defendant's testimony may not be considered for purposes of her Motion for Judgment of Acquittal.

## II.     Motion for Judgment of Acquittal.

Defendant moved for a judgment of acquittal on all eight counts, asserting the United States failed to present sufficient evidence of her non-Indian status. Federal Rule of Criminal Procedure 29(a) provides:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

When considering whether the evidence is sufficient, the court analyses "whether taking the evidence together with the reasonable inferences to be drawn therefrom in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. McCullough*, 457 F.3d 1150, 1168 (10th Cir. 2006) (citation and alterations omitted). Where "the evidence does no more than raise a mere suspicion of guilt or requires piling inference upon inference to conclude the defendant is guilty," a motion for acquittal should be granted. *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). The court concludes a reasonable jury could not find Defendant guilty beyond a reasonable doubt because the United States failed to present sufficient evidence of her non-Indian status.

### A. Alleging and proving Indian status.

In a relatively recent line of cases, the Tenth Circuit has considered how the prosecution's failure to allege and prove a defendant's Indian status effects a conviction of charges brought under 18 U.S.C. § 1152. In *United States v. Prentiss*, the defendant was convicted of arson pursuant to

7

18 U.S.C. § 1152 and on appeal, challenged the sufficiency of the indictment because it alleged neither his nor the victim's Indian status. 206 F.3d 960, 962–964 (10th Cir. 2000) (*Prentiss I*). A panel of the Tenth Circuit held "the Indian status of the defendant and victim are essential elements under 18 U.S.C. § 1152, which must be alleged in the indictment and established by the government at trial." *Id*. at 966. The opinion concluded the prosecution's failure to do so was a structural error that necessitated reversal in all cases. *Id*. at 976. It noted the Fifth Amendment's requirement that the grand jury and petit jury be presented with the same elements, and considered the Indian status of the defendant and victim as "indispensable to establishing federal jurisdiction." *Id*. at 974, 977. Rejecting the government's argument that the issue be subject to a harmless-error analysis, the panel vacated the defendant's conviction. *Id*. at 977.

The circuit then granted rehearing en banc. *United States v. Prentiss*, 256 F.3d 971, 972 (10th Cir. 2001) (*Prentiss II*). It "agree[d] with the panel opinion's conclusion that the Indian and non-Indian statuses of the victim and defendant are elements" of a crime brought pursuant to 18 U.S.C. § 1152. *Id*. at 972–973. It otherwise departed from the panel, however, and "conclude[d] that the indictment's failure to allege the Indian/non–Indian statuses of the victim and the defendant did not deprive the district court of subject matter jurisdiction and is therefore subject to review for harmless error." *Id*. at 973. Thus, the circuit held that while the Indian status of the victim and defendant must be alleged in the indictment, the government's failure to do so is not necessarily fatal. *Id*. at 980–981. At least where the defendant raises the issue for the first time on appeal, the failure to allege the Indian status of the victim and defendant does not require automatic reversal when the failure to do so was harmless. *Id*. at 984.

On remand, the panel applied this standard and determined that the government's failure to allege the Indian status of the victim and defendant was *not* harmless. *United States v. Prentiss*,

8

273 F.3d 1277, 1278 (10th Cir. 2001) (*Prentiss III*). To show the error was harmless, the government was "required to demonstrate that, in light of the evidence presented at trial, no jury could reasonably find that the victim of the crime was not an Indian and that [the defendant] was not a non-Indian. In other words, these omitted elements must be uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id*. at 1279 (citation and alterations omitted). The court therefore needed to consider what evidence of the defendant and victim's Indian status was presented at trial. *Id*. at 1282. A person is considered an "Indian" when he or she "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *Id*. at 1280. The defendant had stipulated that the victim was a member of the Tesque Pueblo, but there was no evidence about the victim's Indian blood. *Id*. at 1283. Consequently, the court concluded there was insufficient evidence to establish the victim was an Indian. *Id*. As to the defendant, the only evidence presented of his non-Indian status was testimony that he was not a member of the Tesque Pueblo. *Id*. The court concluded this too was insufficient to prove the defendant was not an Indian. *Id*. Consequently, his conviction was again vacated. *Id*. at 1283–84.

The Tenth Circuit subsequently overruled *Prentiss II* to the extent the case held harmless error is the applicable standard of review where a defendant challenges the sufficiency of an indictment for the first time on appeal. *United States v. Sinks*, 473 F.3d 1315, 1317 (10th Cir. 2007). Instead, in such a scenario, plain error is the applicable standard. *Id*. (citing *United States v. Cotton*, 535 U.S. 625, 631 (2002) ("Freed from the view that indictment omissions deprive a court of jurisdiction, we proceed to apply the plain-error test of Federal Rule of Criminal Procedure 52(b) to respondents' forfeited claim.")). To succeed under this standard, a defendant must show: "(1) an error, (2) that is plain, (3) that affects substantial rights and, (4) seriously affects the

fairness, integrity, or public reputation of judicial proceedings." *Id*. at 1321 (alterations omitted). In *Sinks*, the defendant was found guilty of possessing stolen explosive materials and challenged his conviction because the indictment did not charge, and the jury did not find, the explosive material had traveled in interstate commerce (an element contained in the applicable statute). *Id*. at 1320. The court concluded these omissions were errors and plain, but did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because the evidence on the interstate commerce element was "overwhelming and essentially uncontroverted." *Id*. at 1321. Testimony was presented the dynamite at issue was stolen in Arizona and found in New Mexico. *Id*. Thus, there could be no dispute the explosive materials traveled in interstate commerce. *Id*. Despite the fact the indictment failed to allege, and the jury failed to find, an interstate commerce element, the defendant's conviction was affirmed due to the overwhelming nature of the evidence. *Id*. at 1322.

When the *Prentiss* trilogy and *Sinks* were issued, the then-operative versions of Federal Rule of Criminal Procedure 12 provided that a defendant could challenge an indictment on the ground that it failed to charge an offense "at any time while the case is pending." *Sinks*, 473 F.3d at 1320–21. Each scenario involved a challenge to the indictment for the first time on appeal. *Id*. at 1320; *Prentiss II*, 256 F.3d at 973. The current version of Federal Rule of Criminal Procedure 12, however, provides that "a defect in the indictment or information, including . . . failure to state an offense" must be raised by pretrial motion. Fed. R. Crim. P. 12(b)(3)(B). Accordingly, much of the standard of review analysis in *Prentiss* and *Sinks* may no longer be operative unless the defendant challenges the sufficiency of the indictment prior to trial. *See United States v. Herrera*, 51 F.4th 1226, 1282 (10th Cir. 2022) ("A pretrial motion is required when a defendant objects to prosecution based on 'a defect in the indictment or information,' including 'failure to state an

offense.' Fed. R. Crim. P. 12(b)(3)(B). If the defendant doesn't file a pretrial motion, a later challenge to the prosecution would be considered untimely.").

Overall, then, the Indian and non–Indian statuses of the victim and the defendant are essential elements of a crime brought pursuant to 18 U.S.C. § 1152. The government must allege these elements in the indictment and prove them at trial.

### B. Defendant's non-Indian status.

Unlike in the foregoing cases, Defendant has not challenged the sufficiency of the Indictment but has instead challenged the sufficiency of the evidence, moving for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The cases are nevertheless significant in that they establish "the Indian/non–Indian statuses of the victim and the defendant are essential elements" of a crime brought pursuant to 18 U.S.C. § 1152. *Prentiss II*, 256 F.3d at 980. The cases are also instructive in that they outline the evidence sufficient to establish Indian status, at least under the applicable standards of review.

Defendant's non-Indian status is an essential element of the charges brought against her under 18 U.S.C. § 1152. *See id*. The court therefore "must" enter a judgment of acquittal if the evidence of Defendant's non-Indian status is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29(a). As noted above, there is a two-part test to determine whether an individual is an Indian: he or she must (1) have "some Indian blood" and (2) be "recognized as an Indian by a tribe or by the federal government." *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012). A person is considered a non-Indian, conversely, if he or she fails either prong of this test. *Id*. Indian or non-Indian status is determined by application of "a totality-of-the evidence approach" on a case-by-case basis. *Id*. For example, a jury could *not* find non-Indian status solely on the basis of an individual's name, appearance, and speech, coupled with testimony that he or she did not grow up

11

on a particular pueblo. *Id*. (citing *United States v. Romero*, 136 F.3d 1268, 1274 (10th Cir. 1998)). A jury *could* find non-Indian status, conversely, on the basis of testimony from the victim's father that neither he nor his wife had any Indian ancestry, and that the victim had never enrolled in or associated with any tribe. *Id*. at 1187–88.

In the present case, the United States presented the following evidence that might arguably pertain to Defendant's non-Indian status:

> The prosecutor asked Ms. Showalter: "As part of the now federal investigation, did you also have to confirm the tribal status of the victim or the defendant in this case?" [Dkt. No. 222, 10:13 – 15]. Ms. Showalter responded that the victim was a member of the Cherokee Nation [*Id*., 10:16 – 11:4].
>
> ***
>
> The prosecutor asked Charles York, Defendant's former husband and G.Y.'s biological father, "What side of the family does [G.Y.'s] Native American heritage come from?" Mr. York responded, "My side."
>
> ***
>
> The order dismissing the prior state court proceeding has an "X" by the paragraph which provides that the victim has some degree of Indian blood, while the paragraph providing that Defendant has some degree of Indian blood is left blank [Government Exhibit 4, p. 1].
>
> ***
>
> Records from a genetics consultation G.Y. underwent provide: "MATERNAL: Native American ancestry" [Government Exhibit 152, p. 3].

This evidence is insufficient. The testimony of Ms. Showalter is not evidence of Defendant's non-Indian status; she testified only about G.Y. and did not even address Defendant, despite the question referencing Defendant. Further, the testimony of Mr. York and the state court order are not direct evidence of Defendant's non-Indian status. At most, negative implications might be used to deduce from them circumstantial evidence of Defendant's non-Indian status. If G.Y.'s Native American heritage comes from Mr. York's side of the family, then perhaps one might infer that G.Y.'s Native American heritage did not come from Defendant's side. Similarly, the state court

placed an "X" by the paragraph which provides that G.Y. has some degree of Indian blood, but placed no notation by the paragraph providing that Defendant has some degree of Indian blood. Perhaps one might infer from this document that Defendant has no degree of Indian blood. Overall, though, the first three pieces of evidence are silent as to Defendant's non-Indian status and require an elongated and amorphous series of negative inferences to support the conclusion that Defendant is a non-Indian. These inferences, however, cannot withstand consideration of the fourth piece of evidence. The only evidence presented to the jury which affirmatively addresses Defendant's non-Indian status expressly states that she has Native American ancestry [Government Exhibit 152, p. 3].

The court is mindful of its obligation to draw reasonable inferences in a light most favorable to the United States, but it is not obligated to pile "inference upon inference." *See Dewberry*, 790 F.3d at 1028. Testimony that a defendant is not a member of a particular pueblo is insufficient to prove non-Indian status. *Prentiss III*, 273 F.3d at 1283. And testimony that a defendant did not grow up on a particular pueblo, coupled with that individual's name, appearance, and speech is likewise insufficient to prove non-Indian status. *Diaz*, 679 F.3d at 1187. Consequently, testimony that G.Y. is a member of the Cherokee Nation, even buttressed by the negative implications considered above, is insufficient to prove Defendant is a non-Indian. The United States failed to present evidence of Defendant's non-Indian status and in fact, presented evidence of her Native American ancestry. This evidence is insufficient to sustain a conviction. A reasonable jury could not find Defendant guilty beyond a reasonable doubt.

In sum, the Indian and non–Indian statuses of the victim and the defendant are essential elements of a crime brought pursuant to 18 U.S.C. § 1152. The United States charged Defendant with crimes brought pursuant to 18 U.S.C. § 1152 but failed allege and prove she was a non-Indian.

Consequently, the United States has failed to present evidence sufficient to sustain a conviction. The court therefore must enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(a). Defendant is acquitted of Counts One, Two, Three, Four, Five, and Six of the Indictment. The United States has asserted in its Motion to Reopen that a result such as this is unjust. Nevertheless, nothing exhibits justice better than the United States pleading and proving each and every essential element of the charges it files.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment of Acquittal [Dkt. No. 219] is **GRANTED** as to Counts One, Two, Three, Four, Five, and Six of the Indictment. Additionally, the United States' Motion to Reopen its Case-in-Chief, or in the alternative, Response to Defendant's Motion for Judgment of Acquittal [Dkt. No. 224] is **DENIED**.

**IT IS SO ORDERED** this 22nd day of November, 2022.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**